UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARVEL L. WILLINGHAM,

Plaintiff,

v.                                                        Case No. 23-cv-521-pp

CHRISTOPHER J. RAUCH,

Defendant.

**ORDER SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Marvel L. Willingham, who is confined at Redgranite Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendant violated his rights under federal and state law. The plaintiff has paid the full filing fee. This decision screens his complaint, dkt. no. 1.

**I. Screening the Complaint**

A.     Federal Screening Standard

Under the Prison Litigation Reform Act, the court must screen complaints brought by incarcerated individuals seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated individual raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

1

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

2

B.    The Plaintiff's Allegations

The plaintiff has sued Christopher Rauch, a dentist at Redgranite Correctional Institution. Dkt. No. 1 at ¶5. The plaintiff alleges that when he transferred to Redgranite from Green Bay Correctional Institution on November 20, 2021, he had two damaged teeth: his back tooth #3 from which the filling had fallen out and a cracked "side-front" tooth. Id. at ¶¶7-10. Within a couple weeks of arriving at Redgranite, Rauch allegedly acknowledged that the plaintiff had problems with the above-described teeth and said that if the plaintiff submitted a dental slip, Rauch would get him in right away. Id. at ¶11. The plaintiff says in July 2022, the pain intensified dramatically so he forwarded another dental service request to Rauch, and he was told he would be placed on the waiting list. Id. at ¶12.

The plaintiff alleges that in September 2022, he returned to Green Bay Correctional Institution for several months and, while there, complained about his severe tooth pain. Id. at ¶13. He received a response stating that he was on the waiting list. Id.

In December 2022, the plaintiff allegedly returned to Redgranite and within one month, he received x-rays in preparation for the extraction of his back tooth #3. Id. at ¶14. The plaintiff says that during the procedure, he asked Rauch if Rauch could also fix his cracked tooth since the plaintiff had been waiting so long and the cracked tooth caused severe pain. Id. Rauch allegedly instructed the plaintiff to submit a dental service request. Id.

3

The plaintiff alleges that on January 16, 2023, he forwarded a dental service request explaining that he had been waiting since 2019 to have his cracked tooth fixed and asking why the dentist couldn't fix the cracked tooth when he extracted the back tooth. Id. at ¶15. The plaintiff received a response from Rauch that said he was on the waiting list. Id. Two days later, the plaintiff allegedly forwarded another dental service request complaining of severe pain due to cold air getting into his cracked tooth and "freezing pain" which prevented him from eating food. Id. at ¶16. The plaintiff says that he received a response from Rauch stating that he was on the waiting list. Id. The plaintiff alleges that on January 22, 2023, he contacted the health services manager, Ms. Thompson (not a defendant), and explained that he had been experiencing severe pain with his cracked tooth and that Rauch refused to treat the problem. Id. at ¶17.

On January 23, 2023, Rauch allegedly summoned the plaintiff to the Health Services Unit where he addressed the information contained in the plaintiff's correspondence to Thompson. Id. at ¶18. Dr. Rauch allegedly stated in a heated tone of voice, "You never want to go over a dentist['s] head in order to rush the process. This will only make a dentist mad; in which a dentist could then be forced to do the filling, but leave something in the tooth to damage it from the inside even more." Id. That same day, the plaintiff allegedly told Health Services Manager Thompson in an interview request what Rauch had said to him; the plaintiff says he told Thompson that he now was afraid to go to the dentist based on the dentist's threats, but that the plaintiff never

4

received a response from Thompson. Id. at ¶19. The plaintiff says that the next day, he submitted a request to Captain Mastricola, the security supervisor, explaining what Rauch said to him and that Rauch refused to treat his cracked tooth. Id. at ¶20. The plaintiff also allegedly informed Mastricola that "he was very afraid of Dr. Rauch and did not want him in his mouth after his threat of violence" and asked Mastricola to file an incident report. Id. The plaintiff says that Mastricola acknowledged receiving the plaintiff's interview request form, but didn't say what she would do. Id.

The plaintiff says that on February 5, 2023, he submitted another dental service request, explaining that waiting about three years to get a very painful tooth treated was absurd, that the "O-T-C medication" was ineffective and that the pain had spread to the side of his face and ear. Id. at ¶22. The plaintiff allegedly subsequently submitted a psychological services request stating that he was suffering severe pain and that it was beginning to stress him out and affect him mentally. Id. at ¶25. The plaintiff says that Rauch responded that he would not provide emergent care. Id.

The plaintiff claims that Rauch delayed and failed to treat his dental needs in violation of the Eighth Amendment, that Rauch retaliated against him after the plaintiff complained about Rauch's inaction and that Rauch's actions amounted to intentional infliction of mental or emotional distress in violation of Wisconsin state law. Id. at ¶¶27-29. For relief, he seeks declaratory relief and compensatory damages. Id. at 7. He also requests that the court appoint a lawyer to represent him. Id.

C.     Analysis

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference to the serious medical need of an incarcerated individual. Cesal v. Moats, 851 F.3d 714, 720-21 (7th Cir. 2017) (citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). "This principle applies equally to dental care." McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010) (citing Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010)). To state a claim for deliberate indifference for deficient medical care, the plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." Id. at 721 (quoting Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

An objectively serious medical need is one that has either been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012)). The deliberate indifference standard is subjective and requires a plaintiff to allege that the official knew of, but disregarded, a substantial risk to the inmate's health. Id. (citing Farmer v. Brennan, 511 U.S. 825, 836-38 (1994); Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)). A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an incarcerated individual's pain. McGowan, 612 F.3d at 640 (citing Estelle, 429 U.S. at 104-05. The plaintiff may proceed on a claim that Rauch acted with deliberate indifference to his serious medical needs based on allegations that Rauch

6

delayed in treating the plaintiff's back tooth #3 and did not treat his cracked tooth.

To plead a retaliation claim, the plaintiff needs to allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)). The plaintiff may proceed on a retaliation claim based on allegations that, after the plaintiff complained to the health services manager that Rauch had not treated his cracked tooth and when the health services manager told Rauch what the plaintiff had said, Rauch told the plaintiff he should never go over a dentist's head or the dentist might be forced to harm the plaintiff while fixing his teeth. See Beatty v. Henshaw, 826 F. App'x 561, 563-64 (7th Cir. 2020) (threats of harm can deter First Amendment activity) (citing Douglas v. Reeves, 964 F.3d 643, 649 (7th Cir. 2020)).

To raise a claim for intentional infliction of emotional distress under Wisconsin law, a plaintiff must allege "(1) that the defendant's conduct was intentioned to cause emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct was a cause-in-fact of the plaintiff's emotional distress; and (4) that the plaintiff suffered an extreme disabling emotional response to the defendant's conduct." Cox v. Med. College of Wis., Inc., No. 22-CV-553-JPS, 2023 WL 199216, at *38 (E.D. Wis.

7

Jan. 17, 2023) (quoting <u>Lenczner v. Fargo</u>, No. 14-cv-691-wmc, 2017 WL 2371294, at *3 (W.D. Wis. May 31, 2017)). The plaintiff may proceed on a claim that Rauch subjected him to intentional infliction of emotional distress based on Rauch's comments that he could harm the plaintiff while performing dental work because the plaintiff complained about the treatment delay. The court will exercise supplemental jurisdiction over the plaintiff's state law claim. <u>See</u> 28 U.S.C. §1367(a).

Finally, in the complaint's Relief Requested section, the plaintiff asks the court to appoint him a lawyer. Dkt. No. 1 at 7. A civil litigant has no right to have an attorney represent him in a civil action. Under some circumstances, the "Court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. §1915(e)(1). *Pro bono* resources are scarce in comparison to the number of cases filed by incarcerated individuals. As a result, the court will exercise its discretion to find a lawyer to represent a plaintiff only (1) after the plaintiff has made reasonable attempts to find a lawyer himself; and (2) if the court believes that "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" <u>Navejar v. Iyiola</u>, 718 F.3d 692, 696 (7th Cir. 2013) (quoting <u>Pruitt v. Mote</u>, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Finally, the court may consider the merits and what is at stake when deciding whether to allocate scarce *pro bono* counsel resources. Watts v. Kidman, 42 F.4th 755, 765 (7th Cir. 2022).

The plaintiff's request is premature because he has not shown that he tried to find a lawyer on his own. Before the plaintiff asks the court to recruit a

lawyer to represent him, he first must contact several lawyers (at least three) to see if he can find a lawyer on his own. If none of the lawyers the plaintiff contacts agree to represent him, he then may file a motion asking the court to appoint a lawyer, but he must attach to that motion letters or other evidence showing that he tried to find a lawyer but was unsuccessful. Even if the plaintiff does that, he also must show that the case is sufficiently complex or difficult that he cannot present the case without a lawyer's help. The plaintiff must show more than just that he does not have money and does not have legal training in order for the court to appoint him a lawyer.

## II.    Conclusion

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendant Christopher J. Rauch. Under the informal service agreement, the court **ORDERS** this defendant to file a responsive pleading to the complaint within sixty (60) days.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs

9

who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court includes with this order a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 18th day of May, 2023.

BY THE COURT:

_____

HON. PAMELA PEPPER
**Chief United States District Judge**

10