UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARVEL L. WILLINGHAM,

                Plaintiff,

v.                                             Case No. 23-cv-521-pp

CHRISTOPHER J. RAUCH,

                Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON EXHAUSTION GROUNDS (DKT. NO. 12)**

      Plaintiff Marvel L. Willingham, who is incarcerated at Redgranite Correctional Institution and is representing himself, filed this case alleging that defendant Christopher J. Rauch violated his constitutional rights. The court screened the complaint under 28 U.S.C. §1915A and allowed the plaintiff to proceed on claims that the defendant did not adequately treat the plaintiff's serious dental needs in violation of the Eighth Amendment, retaliated against the plaintiff for complaining about the defendant's treatment and subjected the plaintiff to intentional infliction of emotional distress in violation of Wisconsin state law. Dkt. No. 5 at 6-8. The defendant has filed a motion for partial summary judgment in which he contends that the plaintiff failed to exhaust his administrative remedies as to his Eighth Amendment claim. Dkt. No. 12. This order grants the defendant's motion and sets deadlines for the parties to complete discovery and seek summary judgment on the merits.

## I. Facts[1]

The court allowed the plaintiff to proceed on the following claims: (1) the defendant acted with deliberate indifference to the plaintiff's serious medical needs based on allegations that the defendant delayed in treating the plaintiff's back tooth #3 and did not treat his cracked tooth; (2) the defendant retaliated against the plaintiff based on allegations that the defendant threatened harm against the plaintiff after he complained about inadequate dental care; and (3) the defendant subjected the plaintiff to intentional infliction of emotional distress based on the defendant's comments that he could harm the plaintiff while performing dental work because the plaintiff complained about the treatment delay. Dkt. No. 5 at 6-8.

The plaintiff submitted one administrative complaint, RGCI-2023-1547, related to the claims in this lawsuit. Dkt. No. 14 at ¶15. The parties disagree as to whether that complaint exhausts the plaintiff's deliberate indifference claim. According to the defendant, the "one clearly identified" issue in the complaint is that the defendant threatened the plaintiff. Id. at ¶16; Dkt. No. 15 at ¶16, Ex. 1001. The defendant states that the plaintiff did not file any complaints about the defendant's alleged failure to treat the plaintiff's teeth. Dkt. No. 14 at ¶18. The defendant asserts that the institution complaint examiner did not investigate any allegations related to the plaintiff's dental care in processing the complaint. Id. at ¶19. The plaintiff says the complaint "encompasses both his

---

[1] The court includes only material, properly supported facts in this section. See Fed. R. Civ. P. 56(c).

First Amendment retaliation claim as well as his Eighth Amendment deliberate indifference claim." Dkt. No. 20 at ¶4; Dkt. No. 18 at ¶16.

The plaintiff submitted complaint RGCI-2023-1547 on an Inmate Complaint form (DOC-400); he wrote that the date of the incident was January 22, 2023. Dkt. No. 15-2 at 11. The form contains three questions for the plaintiff to answer; the first question is: "Briefly state who or what is the **ONE** issue, of this complaint. What remedial action are you requesting?" Id. The plaintiff responded:

> Dentist Rauch threatened my health. {1-issue}
> I have a very painful tooth that need a filling, yet I fear that Dentist Rauch will harm me after his threat, so I need a dentist to fill my painful tooth?

Id. The second question on the complaint form is: "With whom did you attempt to resolve your **ONE** issue, and what was the result of this attempt, prior to submitting this complaint? Id. The plaintiff responded:

> I sent HSM Thompson a request slip informing her of the threat. And I don't know what she did, but she sent the request back to me signed. {Ex. 1004} I also sent Capt. Mastricola a request slip informing her of the threat and asking her to file an incident report for me. It's been over a week since I heard back. {Ex. 1005}

Id. The third question on the complaint form asks: "What are the details surrounding this complaint?" Id. The plaintiff responded:

> After waiting nearly 3 years to get two teeth in my mouth treated {Dental file will provide my request history} I was finally called in early Jan. 2023 by Dentist Rauch to get one of them pulled out. When I asked him why he couldn't do the filling on the other tooth that was causing me pain for just as long as the one being pulled he said that I would have to put in another Dental request slip to get it done. After sending that request slip in, thinking that he was implying that I would be called right in considering that how long I been waiting, I was wrote back saying I was on the waiting list

{Ex. 100}, I then sent a second request in trying to explain that I been going through this waiting list part for years now and my tooth causing intense pain {Ex. 101} in which I was called in and given pain pills to hold over the pain. I explained that I been going through this same process for years and I just need my filling fix[ed]. I was just told I would be called in when my name came up {Ex. 102}. I then wrote HSM Ms. Thompson to try and explain what I been going through and to try and get in to get my tooth treated {Ex. 103}. In response she referred the request slip to Dentist Rauch, who called me right in to talk about it. He first addressed how I had misquoted a couple things he said {I said he refused to treat my second tooth at the time of the back tooth being pulled out, and he said that he never refused – he just don't do fillings at the same time that he do pullings. And he said I also misquoted what he was saying, send him another request.} Then Dentist Rauch went into how going to his supervisor or the administration wouldn't move my name up on the waiting list, but only make him upset. Then he explained the type of power a dentist has when he's upset. Explaining that an upset dentist can leave something in the treated tooth {I can't remember the word of what he said could be left} as he filled the tooth to make matters worse than before and cause a pain that would end up in me losing my tooth. He repeated what he had said about 3 or 4 times, each time explaining that he's not saying that this is something that he would do or is planning on doing, but more warning me not to irritate a dentist because this is the type of power a dentist has. I'm not sure how much of this conversation the dental assistant Ms. Nanowski overheard but she sat across the room during this conversation as Dentist Rauch made this threat. When I left the dentist office I went right back and wrote/notified HSM Thompson of this threat {Ex. 104} and followed writing her the next day writing Capt. Mastricola seeking her help filing an incident report and trying to figure out how to get my painful tooth treated by a Dentist outside of Dentist Rauch because his threat was traumatizing.

Dkt. No. 15-2 at 11-12.

The institution compliant examiner (ICE) determined that the complaint concerned staff misconduct and referred it outside the Inmate Complaint Review System to the warden for confidential investigation under DAI Policy #310.00.01. Dkt. No. 14 at ¶17. The ICE Report states:

Brief Summary: Complains of being threatened by Dentist Rauch.

4

> Summary of Facts: [The plaintiff] complains that Dr. Rauch threatened [the plaintiff] during an appointment. [The plaintiff] alleges that Dr. Rauch explained to [the plaintiff] that an upset dentist could leave something in the treated tooth in response to [the plaintiff] contacting his supervisor or the administration.
>
> Upon review of this complaint the ICE referred the complaint to Warden Cromwell. Warden Cromwell requested that the complaint be dismissed and referred to supervisory staff for investigation into the allegations.
>
> Following the direction of the Warden the ICE recommends this complaint be dismissed with the complaint being referred to supervisory staff for investigation. [The plaintiff] will be provided notice of the waiver of confidentiality. The investigation process is regulated by state law which protects the privacy and due process rights of staff and no further information shall be given to the complainant.

Dkt. No. 15-2 at 2.

The plaintiff filed an appeal to the corrections complaint examiner in which he stated:

> I am not satisfied with the action of the A/RA, on the basis that the actions of [the defendant] constitute as First Amendment retaliation and Eighth Amendment deliberate indifference [sic]. Based on the fact, this complaint ought to have been "Affirmed" on the merits. Pursuant to the relevant case law, prison officials are not permitted to retaliate against prisoners for engaging in protected activities such as grievances and lawsuits. [The defendant's] misconduct stemmed from the fact he got upset when I went over his head and complained about him and his failure to properly treat my dental issues which left me in severe pain.

Dkt. No. 15-2 at 24. The corrections complaint examiner recommended affirming the dismissal of the plaintiff's complaint Id. at 6. The Office of the Secretary accepted that recommendation and dismissed the complaint. Id. at 7.

## II. Analysis

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. Discussion

The defendant contends that the plaintiff failed to exhaust his administrative remedies for his Eighth Amendment claim because he did not submit an administrative complaint related to the defendant's alleged deficient dental care. Dkt. No. 13 at 9. The plaintiff responds that to "allow [the defendant] now, at this point, to complain stating that Plaintiff did not properly exhaust would be allowing [the defendant] to take unfair advantage of the exhaustion requirement." Dkt. No. 17 at 2. He maintains that his complaint raised the issue that the defendant had failed to properly treat his damaged teeth and that the ICE "had the discretion to reject this complaint if he felt or believed the (1-issue of this complaint was not clear.)." Id. at 1-2. The plaintiff contends that the court should deny the defendant's motion "on the basis that this claim was waived and that the defendant has not met its burden that the Plaintiff failed to exhaust." Id. at 2.

1. *The Exhaustion Requirement*

The Prison Litigation Reform Act (PLRA) states that an incarcerated individual cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires an incarcerated person to comply with the rules applicable to the grievance process at his institution. Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether

7

they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. Pavey v. Conley, 544 F.3d 739, 740-41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

The "Inmate Complaint Review System" (ICRS) in the Wisconsin prisons is the administrative remedy available to individuals with complaints about prison conditions or the actions of prison officials. Wisconsin Administrative Code §DOC 310.01(2)(a). Before an incarcerated individual may commence a civil action, he must exhaust all administrative remedies the Department of Corrections (DOC) "has promulgated by rule." Wis. Admin. Code §DOC 310.05. The ICRS is available for individuals to "raise issues regarding policies, living conditions, or employee actions that personally affect the inmate or institution environment." Wis. Admin. Code §DOC 310.06(1).

To use the ICRS, an incarcerated person must file a complaint with the institution complaint examiner (ICE) within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §DOC 310.07(2). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority," who may recommend that the complaint be affirmed or dismissed in whole or in part. Wis. Admin. Code §§DOC 310.10(9) & 310.10(12). Within fourteen days after the date of the decision, an incarcerated individual may appeal the reviewing authority's decision to the corrections complaint examiner (CCE).

Wis. Admin. Code §DOC 310.09(1). The CCE reviews the appeal and makes a recommendation to the secretary of the DOC. Wis. Admin. Code §DOC 310.12(9). The secretary affirms or dismisses the CCE's recommendation, or returns the appeal to the CCE for further investigation. Wis. Admin. Code §DOC 310.13(2).

2. *Analysis*

The parties agree that the plaintiff filed one ICRS complaint related to this case. That complaint clearly states that the plaintiff's "one issue" is that the defendant threatened him and that he tried to resolve this issue by informing prison staff of the threat. The ICE reasonably interpreted the plaintiff's complaint as containing the one issue that the plaintiff said it contained—that the defendant threatened him. In the section of the complaint that asks for details surrounding the complaint, the plaintiff explains that the defendant threatened him after the plaintiff complained that the defendant did not fill one tooth at the same time he pulled a different tooth and that the defendant delayed in scheduling an appointment to fill the tooth. The plaintiff has not demonstrated that these details surrounding his complaint raised a second issue that the ICE was required to address.

The objective of §1997e(a) is to permit the institution's "administrative process to run its course before litigation begins." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (quoting Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005)); see also Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit applies a "strict compliance approach to exhaustion" and

9

expects incarcerated individuals to adhere to "the specific procedures and deadlines" established by the institution's policy. Dole, 438 F.3d at 809; see also Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted). The DOC rules for exhaustion of administrative remedies require that "[e]ach complaint may contain only one clearly identified issue." Wis. Admin. Code §DOC 310.07(5). The plaintiff's "one clearly identified issue" in complaint RGCI-2023-1547 is his claim that the defendant threatened him. The ICE addressed that issue; the ICE did not investigate or address any issue related to the alleged inadequate dental care. To exhaust his claim that the defendant did not adequately treat his dental needs, the plaintiff needed to file a separate complaint raising that as his "one issue."

The plaintiff did not exhaust his Eighth Amendment claim. The court will grant the defendant's motion for partial summary judgment on exhaustion grounds as to the Eighth Amendment claim.

### III. Conclusion

The court **GRANTS** the defendant's motion for partial summary judgment on exhaustion grounds. Dkt. No. 12. The court **DISMISSES WITHOUT PREJUDICE** the plaintiff's Eighth Amendment claim. See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004).

The court **ORDERS** that the deadline for the completion of discovery is **September 20, 2024**, and the deadline for the parties to file motions for summary judgment on the merits is **October 25, 2024**. The deadlines in Civil

Local Rule 56 govern the deadlines for filing a brief in opposition to summary judgment and for filing a reply in support.

Dated in Milwaukee, Wisconsin this 17th day of June, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**