UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARVEL L. WILLINGHAM,

                      Plaintiff,

v.                                                  Case No. 23-cv-521-pp

CHRISTOPHER J. RAUCH,

                      Defendants.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 29) AND DISMISSING CASE**

      Plaintiff Marvel L. Willingham, who is incarcerated at Redgranite Correctional Institution and is representing himself, filed this case alleging violations of his constitutional rights. The court screened the complaint under 28 U.S.C. §1915A and allowed the plaintiff to proceed on claims that the defendant did not adequately treat the plaintiff's serious dental needs in violation of the Eighth Amendment, retaliated against the plaintiff for complaining about the defendant's treatment and subjected the plaintiff to intentional infliction of emotional distress in violation of Wisconsin state law. Dkt. No. 5 at 6-8. On June 17, 2024, the court granted the defendant's motion for partial summary judgment on exhaustion grounds and dismissed the plaintiff's Eighth Amendment claim. Dkt. No. 28. The defendant since has filed a motion for summary judgment on the merits of the plaintiff's remaining claims. Dkt. No. 29. The day after the defendant filed that motion, the court ordered that the plaintiff's response was due on November 25, 2024, and told

1

the plaintiff that if by that date the court did not receive either his response or an explanation for why he could not timely file a response, it would resolve the defendant's motion without input from the plaintiff. Dkt. No. 34. The court sent that order to the plaintiff at Redgranite Correctional Institution where, according to the Wisconsin Department of Corrections' offender locator, the plaintiff has been housed since December 2022. The order was not returned as undeliverable, so the court has no reason to believe that the plaintiff did not receive the order. The court did not receive a response from the plaintiff by November 25, 2024; the court has received nothing from the plaintiff since December 26, 2023, when it received his response to the defendant's motion for summary judgment on exhaustion grounds. This order grants the defendant's motion for summary judgment on the merits and dismisses the case.

## I. Defendant's Motion for Summary Judgment, Dkt. No. 29

### A. Facts

As noted above, the plaintiff currently is incarcerated at Redgranite Correctional Institution. Dkt. No. 31 at ¶1. The defendant is employed by the Wisconsin Department of Corrections as a dentist at Redgranite. Id. at ¶2. The plaintiff alleges that the defendant threatened to harm the plaintiff's tooth while performing dental work because the plaintiff complained to the Health Services manager about the defendant's treatment of him. Id. at ¶5.

To request dental services, an incarcerated individual must submit a Dental Services Request (DSR). Id. at ¶6. The dentist triages DSRs and assigns them to a "list": the routine wait list, the hygiene wait list, the essential wait list, the urgent wait list or the prosthetic wait list. Id. at ¶¶8, 10. The "routine wait list" is for dental conditions such as cavities, broken or cracked filings, restorative care or other dental treatment where delay in treatment would not result in a serious health risk or discomfort to the patient. Id. at ¶12. The "teeth cleaning or hygiene wait list" is reserved for services rendered by the dental hygienist, including initial cleanings and annual cleanings. Id. at ¶13. The "essential wait list" is reserved for a patient with a dental condition which is chronic or asymptomatic and patients on the list are usually seen within eight weeks. Id. at ¶14. The "urgent wait list" is reserved for same-day treatment of patients where delay would result in increased morbidity or mortality, including jaw fracture and objective evidence of spread of infection to the structures beyond the mouth. Id. at ¶16.

The plaintiff was housed at Redgranite from November 24, 2021 until September 28, 2022, when he was transferred to Green Bay Correctional Institution (Green Bay). Id. at ¶23. On December 7, 2022, the plaintiff returned to Redgranite. Id.

On November 29, 2021, as part of the initial intake after the plaintiff arrived at Redgranite, the defendant reviewed the plaintiff's dental records. Id. at ¶26. The defendant noted that at the plaintiff's prior dental exam, conducted on November 18, 2021 while the plaintiff was at Green Bay, the dentist there,

3

Dr. Yang, reported caries (decay) in tooth #3 and tooth #28. Id. at ¶27. Yang had informed the defendant that due to the size of the decay, the tooth could not be restored (with a filling) and had recommended that tooth #3 be extracted. Id. at ¶30. The plaintiff told Yang that he wanted to keep tooth #3 and refused the extraction that day. Id. The plaintiff signed a refusal of the recommended extraction of tooth #3, which usually would have resulted in the plaintiff being removed from the essential waitlist; but the plaintiff was not removed from that list. Id. at ¶¶30, 42.

On December 14, 2021, the plaintiff was scheduled to see the defendant based upon his name remaining on the essential wait list while he was at Green Bay. Id. at ¶42. At the visit with the defendant, the plaintiff stated that he did not want extraction of tooth #3 but wanted a filling for tooth #28. Id. The defendant instructed the plaintiff to submit another DSR so he could be placed on the list for a filling. Id.

On July 15, 2022, the plaintiff submitted a DSR stating, "I have two teeth that need to be filled, one of them may have to get pulled." Id. at ¶44. The defendant responded to this DSR by checking the box to place the plaintiff on the routine wait list. Id.

On October 4, 2022, the plaintiff again was at Green Bay and submitted a DSR to the Green Bay dentist, stating that he wanted to be called for an extraction, that the pain was "bad bad" and that he also wanted a filling done. Id. at ¶45. Dr. McLuen placed him on the essential wait list and noted that the plaintiff already was on the routine wait list for the filling. Id.

4

On December 9, 2022, after returning to Redgranite from Green Bay, the defendant saw the plaintiff for an initial appointment. Id. at ¶46. At this appointment, the defendant discussed with the plaintiff the need for tooth #3 to be extracted based on advice received at Green Bay. Id. at ¶47. No new diagnosis was needed or intended at this visit. Id. For an extraction, the plaintiff would be placed on the essential wait list and would be seen in less than one month. Id. The plaintiff requested that an extraction be scheduled. Id.

On January 3, 2023, the defendant saw the plaintiff and performed an extraction of tooth #3. Id. at ¶48. The defendant understood that the plaintiff was not happy that he could not put a filling in the plaintiff's tooth #28 at the time the defendant extracted tooth #3. Id. at ¶49. The defendant says that he avoids placing fillings the same day as an extraction due to the risk of scrap metal from placing the filling becoming embedded in the bone where the tooth had been extracted. Id. at ¶50. Additionally, placing fillings during an essential wait list visit would allow that patient to skip in line over those who were waiting in front of him for fillings. Id. In the subsequent days, the plaintiff submitted multiple DSRs asking for his filling of tooth #28. Id. at ¶¶51, 52. The defendant responded to him by telling him that he already was on the routine wait list and would be called when it was his turn. Id.

On January 22, 2023, the plaintiff submitted an Information Request directed to the Health Services Manager (HSM) complaining about waiting for a filling. Id. at ¶53. HSM Thompson forwarded the plaintiff's Information Request to the defendant to answer. Id. at ¶54. On January 23, 2023, the defendant

5

called the plaintiff into the dental clinic to talk to him about the request slip he had sent to HSM Thompson. Id. at ¶55. The defendant explained to the plaintiff that if the plaintiff had acute pain, the defendant could extract the tooth (#28) and that the extraction could be performed on a high priority basis. Id. at ¶56. The defendant also explained that the plaintiff's complaints that he "can't sleep or eat" were indications of possible pulpitis or necrosis which would make a filling ineffective. Id. at ¶58. The plaintiff told the defendant that he intended to wait his turn for a filling. Id. The defendant told the plaintiff that he would keep him on the routine wait list for filling and that the HSM could not supersede the "in order of request" prioritization of care. Id. at ¶56. The defendant concluded his conversation with the plaintiff by telling the plaintiff that constantly writing DSRs would not get him to the top of the wait list to be seen for a filling. Id. at ¶59. At no time did the defendant say or imply to the plaintiff that he would leave decay under a filling or harm the plaintiff. Id. at ¶60.

The plaintiff submitted an inmate complaint about the meeting with the defendant. Id. at ¶63. The complaint was referred outside the inmate complaint system to the warden for investigation of an alleged staff violation. Id. Captain Chad Keller was assigned to investigate the alleged violation. Id. at ¶64. Keller first interviewed the plaintiff on February 20, 2023; the plaintiff claimed that the conversation in which he alleged the defendant threatened him had lasted thirty minutes. Id. at ¶65. The plaintiff also reported that the dental assistant was a witness to the conversation. Id.

The next day, Keller interviewed the dental assistant, Christiana Nichols. Id. at ¶66. She reported that "she didn't specifically remember [inmate] Willingham but did note that [the defendant] does bring [inmates] up to explain the process and appointments." Id. Nichols also stated that she had never heard the defendant make a statement along the lines of putting something in a filling to cause pain and cause someone to lose the tooth. Id. at ¶67. She further informed Keller that the defendant never has said, "don't upset a dentist." Id. Finally, Nichols reported that she had heard the defendant explain that writing to the dental services unit constantly would not move an incarcerated individual up on the list. Id. at ¶68.

Keller interviewed the defendant and informed him about the plaintiff's complaint. Id. at ¶69. The defendant explained that he had seen the plaintiff about a week after the plaintiff had come to Redgranite and had removed a tooth due to an infection. Id. at ¶70. The defendant reported that the plaintiff kept writing and wanted a different tooth filled so the defendant brought the plaintiff to the dental clinic to explain that he would have to wait for his name to come up on the list and that the defendant took care of the pain that he had. Id. Keller told the defendant that the plaintiff stated in his complaint that the defendant told the plaintiff that the defendant could put a substance in the plaintiff's filling to cause pain. Id. at ¶72. The defendant responded that he did not say anything of the sort to the plaintiff and that he would never say or do something to intentionally cause a patient pain or harm. Id.

7

Keller concluded that the plaintiff's allegations were not supported or substantiated. Id. at ¶73. Ultimately, Keller recommended no further action. Id.

B. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

C. Discussion

The defendant asserts that the plaintiff's retaliation claim should be dismissed because the defendant did not retaliate against the plaintiff. Dkt. No. 30 at 11. According to the defendant, the plaintiff's retaliation claim fails because the defendant's alleged action was not motivated by a protected activity, was not sufficiently adverse and because the defendant had a legitimate, non-retaliatory reason for calling the plaintiff to the dental services unit to discuss his DSRs and status on the waitlist. Id. at 11-14. The defendant also contends that he is entitled to qualified immunity because there is no clearly established law holding that making a minor verbal threat which had no impact on the plaintiff would constitute retaliation. Id. at 14-15. Finally, the

defendant contends that the court should relinquish jurisdiction over the plaintiff's state law claim but says that if it declines to dismiss the plaintiff's retaliation claim, the defendant is entitled to summary judgment on the state law claim. Id. at 15-18.

To establish a *prima facie* case of retaliation in violation of the First Amendment, a plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." Whitfield v. Spiller, 76 F.4th 698, 707-08 (7th Cir. 2023) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to rebut the claim by showing that the defendant's actions would have occurred regardless of the protected activity. Manuel v. Nalley, 955 F.3d 678, 680 (7th Cir. 2020) (citing Kidwell v. Eisenhauer, 679 F.3d 957, 964 (7th Cir. 2012)). If the defendant makes this showing, the plaintiff must demonstrate that the defendant's proffered reason for his conduct is pretextual or dishonest. Id. (citing Kidwell, 679 F.3d at 969).

The defendant's undisputed facts establish that he did not threaten to harm the plaintiff. The defendant called the plaintiff to the dental unit to talk with him and clarify the status of the plaintiff's DSRs, not to retaliate against the plaintiff for submitting an inmate complaint. The plaintiff has not

established a *prima facie* case for retaliation. The court will dismiss the plaintiff's retaliation claim.

Because the court has concluded that the plaintiff has no federal claim, the court will relinquish supplemental jurisdiction over the plaintiff's state law claim. See 28 U.S.C. §1367(c)(3); Lavite v. Dunstan, 932 F.3d 1020, 1034-35 (7th Cir. 2019).

## II. Conclusion

The court **GRANTS** the defendant's motion for summary judgment. Dkt. No. 29.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. Rule of App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion *in this court.* See Fed. R. App. P. 24(a)(1). The plaintiff may be assessed a "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in

federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 26th day of December, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**